DYER, Circuit Judge,
dissenting:
I respectfully dissent. The narrow issue in these appeals is whether 11 U.S.C. *358 § 522(f) is available to a Louisiana debtor to avoid an otherwise valid nonpossessory, nonpurchase-money security interest in the form of a chattel mortgage on certain household goods owned by the debtor, in light of LSA-R.S. 13:3885. In my view § 522(f) is available.
The opening phrase of § 522(f), “[n]ot-withstanding any waiver of exemptions,” indicates that the subsection’s import is to return the situation to the status quo ante, i.e., prior to any improvident waiver of an exemption by the debtor. When the debtors entered the creditors’ office they enjoyed an exemption under Louisiana law from seizure and sale of their household goods; and when they left the office they could no longer claim an exemption for those goods solely because they had improvidently granted a security interest to the creditors covering such goods. I fail to see how this could be characterized as anything but a waiver of exemptions, subject to the avoiding power found in § 522(f).
Moreover, since “waiver” is modified by “any” it includes waivers resulting from operation of law, and Louisiana courts have long held that a debtor’s execution of a mortgage on exempt property operates as a waiver of exemption. “It is well settled that a debtor, in mortgaging his property, may waive statutory exemptions .... Indeed, our jurisprudence recognizes an implied waiver through conduct, i.e. the execution of the chattel mortgage itself.” Aet-na Finance Co. v. Antoine, 343 So.2d 1195 (La.App.1977).
If the majority opinion correctly states the law, any state can by statute preclude a debtor from availing himself of the loan avoidance provisions found in § 522(f). I cannot conclude that Congress intended to allow states to do this. There is no provision of the Bankruptcy Code which grants the states authority to preempt any subsection of § 522(f) other than subsection (b), which concerns the exemption. Congress intended that even if a state opts out of the federal exemptions, the debtor’s lien avoidance power under subsection (f) is not thereby affected. And under the supremacy clause, United States Constitution, art. VI, cl. 2, any conflict between the state lien conservation provision and the federal lien avoidance provision must be constitutionally resolved in favor of federal law. A state’s policy determination respecting the manner in which its exemptions may be waived should be given application in its own courts but when the forum is a federal bankruptcy court such state policy determinations are subject to congressional override. Curry v. Associates Financial Services, 11 B.R. 716, (D.C.N.D.Ohio, E.D., 1981).
Congress recognized that exemptions, whether state or federal in origin, are an essential feature of the system of financial rehabilitation afforded the hapless debtor in bankruptcy proceedings. Congress reasoned that since exemptions are so essential to this goal of rehabilitation they should be made available to the debtor regardless of whether or not state law would permit their waiver or surrender. This is clearly indicated in S.Rep.No.95-989, 95th Cong., 2d Sess. 76, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5862:
[To] protect the debtors’ exemptions, his discharge, and thus his fresh start, . . . [t]he debtor may avoid ... to the extent that the property could have been exempted in the absence of the lien ... a nonpossessory, nonpurchase-money security interest in certain household and personal goods.
Thus it was Congress’s clear intent that a debtor benefit to the fullest extent possible exemptions granted to him by applicable state laws, even when he may have improvidently waived such exemptions. It is equally clear that Congress was particularly concerned with eradicating certain unconscionable creditor practices in the consumer loan industry. These practices were deemed to frustrate the rehabilitative nature of the bankruptcy laws by effectively denying the debtor his “fresh start” by taking from him and his family certain property essential to their welfare — household goods and furnishings, tools of the debtor’s trade, and medical and health aids. Congress found that since such property has *359 little realizable market value to a creditor, and the replacement cost to the debtor, now without credit, is usually very high, the creditor was able “to use the threat of repossession, rarely carried out, to extract more than he would be able to if he did foreclose or repossess.” H.R.Rep.No.595, 95 Cong., 1st Sess. 127 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6088. Congress intended to preclude the creditor from executing this nonconscionable pressure by allowing the debtor to avoid such security interests. “[I]t does not serve the public interest to enforce the expectation of the creditor at the expense of making the debt- or a ward of the state.” Curry v. Associates Financial Services, supra, at 718.
I would affirm the district court in Blazer Financial Services v. Gipson and reverse the district court in McManus v. Avco Financial Services of Louisiana.